**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOUNTAIN LAKES ABSTRACT CO.** | : | **CIVIL ACTION NO. 3:20-CV-1484** |
| **INC., THOMAS W. FIERS, JENNIFER** | : | |
| **J. FIERS, ROBERT CASPER, and** | : | **(Judge Conner)** |
| **SCOTT M. MARINELLI,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CERTAIN UNDERWRITERS AT** | : | |
| **LLOYD'S, LONDON,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

This is a dispute over insurance coverage brought by plaintiffs Mountain
Lakes Abstract Co., Inc., Thomas W. Fiers, Jennifer J. Fiers, Robert Casper, and
Scott M. Marinelli (collectively "Mountain Lakes") against Certain Underwriters at
Lloyd's, London ("Underwriters"), seeking damages and declaratory relief.
Underwriters assert five counterclaims against Mountain Lakes.  Underwriters now
move for judgment on the pleadings.  We will grant Underwriters' motion.

## I.    Factual Background & Procedural History

Mountain Lakes Abstract Co., Inc., is a title insurance company located in
Pocono Pines, Pennsylvania.  (See Doc. 1 ¶¶ 2, 12).  The individual defendants are
shareholders in Mountain Lakes.  (See id. ¶¶ 3-6, 13).  Underwriters issued
Mountain Lakes an "Errors & Omissions Liability Insurance Policy," Certificate
No. AMS-0141103, covering the period between November 19, 2017, and November
19, 2018.  (See id. ¶¶ 8, 14; Doc. 1-1 at 5).

Under Mountain Lakes' policy, Underwriters promise to pay, *sans* the deductible, all "Damages and Claims Expenses resulting from Claims first made against [Mountain Lakes] during the Policy Period . . . as a result of a Wrongful Act by [Mountain Lakes]" up to $1,000,000 per claim and up to $2,000,000 in the aggregate.  (See Doc. 1-1 at 5, 7).  The policy defines "Claim" as "a demand for money or services," (see id. at 9), and "Wrongful Act" as "[a]ny negligent act, error or omission committed by [Mountain Lakes], arising solely from the performance of Professional Services for others for a fee or commission," (see id. at 13).  However, should the claim result from a "negligent act, error, or omission in failing to identify, disclose and/or prevent theft, conversion, commingling, embezzlement or misappropriation[,]" the policy's coverage is limited to only $100,000 per claim and in the aggregate ("wrongful acts limitation").  (See id.)  The policy requires that Mountain Lakes provide timely notice to Underwriters' agent, Lancer Claims Services ("Lancer"), of any claims against it.  (See id. at 6; see also Doc. 1 ¶ 29).

The policy also enumerates 37 exclusions relieving Underwriters from the obligation to defend and indemnify Mountain Lakes under certain conditions.  (See Doc. 1-1 at 14-17).  Most pertinent to the instant litigation is an exclusion we will refer to as the "criminal acts exclusion."  The criminal acts exclusion bars coverage for claims involving "[a]ny intentional wrongdoing, fraud, dishonesty, or malicious Wrongful Acts by [Mountain Lakes], if a judgment or other final adjudication adverse to [Mountain Lakes] establishes such conduct, or if [Mountain Lakes] admits to such conduct."  (See id. at 14).  Additionally, if Mountain Lakes' criminal conduct is "established as a matter of fact in a civil, arbitration, criminal or other

proceeding," the criminal acts exclusion requires Mountain Lakes to "reimburse [Underwriters] for Claims Expenses." (See id.)

First American Title Insurance Company ("First American") filed a civil complaint against Mountain Lakes in the Monroe County Court of Common Pleas on November 6, 2018, alleging that Marinelli, acting as a closing agent for Mountain Lakes, misappropriated funds related to a real estate transaction transferring a property located at 252 Depponers Road in Blakeslee, Pennsylvania. (See Doc. 1-2; see also Doc. 1 ¶¶ 15-19). Specifically, First American alleged Mountain Lakes, which was responsible for recording the deed and related mortgage for the property, passed a fraudulent check for $11,316 to the recorder of deeds for Monroe County. (See id. ¶¶ 19-21). Mountain Lakes allegedly wrote the check to draw on a nonexistent bank account. (See Doc. 1-2 ¶¶ 48-49). In response to the fraudulent check, the recorder sought to strike the deed, purportedly forcing First American to pay the $11,316 to protect itself against liability. (See id. ¶ 22). The complaint also alleged that Marinelli and Mountain Lakes' misappropriation extended to "other transactions." (See id. ¶ 23). The complaint did not specify the other transactions, but averred Marinelli and Mountain Lakes collected money "at closings" from buyers, sellers, and lenders to pay recording fees, taxes, and insurance premiums, yet never remitted the funds. (See Doc. 1-2 ¶¶ 31, 38, 41, 55). First American also alleged Marinelli had been arrested and was facing criminal charges related to the fraudulent check. (See id. ¶ 54).

First American filed an amended complaint on May 31, 2019, averring additional facts concerning a series of fraudulent real estate transactions through

which Mountain Lakes obtained $287,001.50 from a mortgage lender and for which

First American faced liability. (See Doc. 1-4 ¶¶ 31, 60-67). The following month,

Marinelli pled guilty in the Monroe County Court of Common Pleas to knowingly

passing a bad check while acting as a principal for Mountain Lakes and was

sentenced to between four and twelve months' imprisonment. (See Docs. 10-4, 10-

5). First American filed a second amended complaint on September 25, 2019, (see

Doc. 1 ¶ 34), adding details related to Marinelli's conviction and Mountain Lakes'

alleged misappropriation of funds, and advancing two additional causes of action,

(see Doc. 1-5 ¶¶ 65, 118-129).

Mountain Lakes alleges it "timely" informed Underwriters of First

American's complaint pursuant to the terms of the policy. (See Doc. 1 ¶ 28). Lancer

sent Mountain Lakes a reservation-of-rights letter on January 30, 2019. (See id.

¶¶ 29-30; see also Doc. 1-3 at 1). In the letter, Lancer and Underwriters agree to

provide Mountain Lakes with a legal defense but inform Mountain Lakes that "[i]t

has been reported . . . you have been arrested and charged with fraud and theft

related to local real estate closings" and that "[i]t [is] alleged that you

misappropriated funds in the subject transaction which relates to the complaint, as

well as others." (See Doc. 1-3 at 1-2, 8-9). Consequently, the letter apprises

Mountain Lakes the claim falls within the wrongful acts limitation and "the

maximum amount that can be paid out for the Complaint in indemnity and expense

is $100,000." (See id. at 2; see also Doc. 1 ¶ 40). The letter also cautions Mountain

Lakes that, "based upon the allegations, there are provisions of the Policy that may

apply to limit or preclude coverage," and identifies eight exclusions potentially

applying to the claim, including the criminal acts exclusion.  (See Doc. 1-3 at 2-7).

Mountain Lakes alleges neither Lancer nor Underwriters engaged in any

investigation of First American's claim other than examining the complaint before

sending the letter.  (See Doc. 1 ¶¶ 30, 41).  Mountain Lakes alleges it timely

submitted First American's amended and second amended complaints to

Underwriters.  (See id. ¶¶ 31, 34, 42).  Neither Underwriters nor Lancer sent

Mountain Lakes any additional correspondence until August 5, 2020, (see id. ¶¶ 35,

41), when Underwriters' coverage counsel informed Mountain Lakes by letter that

the "additional information" provided by Mountain Lakes did not change

Underwriters' position regarding coverage, (see Doc. 1-6; see also Doc. 1 ¶ 35).

Mountain Lakes filed the instant suit on August 19, 2020.  Underwriters

answered Mountain Lakes' complaint, denying all claims and asserting five

counterclaims.  Underwriters now move for judgment on the pleadings as to

Mountain Lakes' causes of action and four of the five counterclaims.  The motion is

fully briefed and ripe for disposition.

## II.    Legal Standards

### A.    Judgment on the Pleadings

A motion for judgment on the pleadings is the procedural hybrid of a motion

to dismiss and a motion for summary judgment.  See Westport Ins. Corp. v. Black,

Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007).  Rule 12(c) of

the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings."

FED. R. CIV. P. 12(c).  To succeed on a Rule 12(c) motion, the movant must clearly

establish that no material issue of fact remains to be resolved and that the movant

"is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416

F.3d 214, 220 (3d Cir. 2005); see 5C CHARLES ALAN WRIGHT ET AL., FEDERAL

PRACTICE AND PROCEDURE § 1368 (3d ed. 2015).  A Rule 12(c) motion for judgment on

the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to

dismiss.  See Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017).  That is,

judgment on the pleadings should be granted only when, accepting as true the facts

alleged by the nonmovant and drawing "all reasonable inferences" in that party's

favor, the movant is entitled to judgment as a matter of law.  See id. (citation

omitted).

### B.      Declaratory Judgment

Mountain Lakes and Underwriters seek, *inter alia*, declaratory relief.  The

Declaratory Judgment Act provides that "any court of the United States, upon the

filing of an appropriate pleading, may declare the rights and other legal relations of

any interested party seeking such declaration."  28 U.S.C. § 2201.  The Act strictly

limits the federal courts' authority to matters involving a "case of actual

controversy."  28 U.S.C. § 2201(a).  The Act does not create substantive rights and is

not an independent source of federal jurisdiction, see Skelly Oil Co. v. Phillips

Petroleum Co., 339 U.S. 667, 671-72 (1950); Kelly v. Maxum Specialty Ins. Grp., 868

F.3d 274, 281 n.4 (3d Cir. 2017), but instead "provides a remedy for controversies

otherwise properly within the court's subject matter jurisdiction," see Auto-Owners

Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 394 (3d Cir. 2016).

### III.    Discussion

Mountain Lakes' complaint alleges Underwriters breached the terms of its

insurance policy by failing to cover First American's claim to the full limit of the

policy and, in the process, violated Pennsylvania's "bad faith" statute.[1]  (See

generally Docs. 1). Underwriters deny these allegations and advance four

counterclaims, asking the court to declare First American's claim against Mountain

Lakes falls within four exclusions enumerated in the policy.  (See generally Doc. 10).

The sum of the parties' competing arguments can be reduced to whether

Underwriters are entitled, as a matter of law, to (1) a declaration by the court that

the criminal acts exclusion applies to First American's claim; and (2) judgment in

their favor regarding Mountain Lakes' claim under Pennsylvania's "bad faith"

statute.  We will address these two questions *seriatim.*

---

[1] As a preliminary matter, the policy contains an Oklahoma choice-of-law clause.  (See Doc. 1-1 at 18).  Neither party refers to this clause in their briefing, and both advance their legal arguments as if Pennsylvania law governs the dispute *sub judice*.  (See Doc. 1 ¶¶ 25, 39, 61, 69-70; Doc. 22 at 13, 18, 20, 22-23; Doc. 24 at 6, 10-11; Doc. 25 at 4, 8, 11).  Consequently, we deem the choice-of-law clause waived and the parties to agree Pennsylvania law governs the policy.  See Botman Int'l, B.V. v. Int'l Produce Imports, Inc., 205 F. App'x 937, 941 (3d Cir. 2006) (nonprecedential) (citing Neely v. Club Med Mgmt. Servs., Inc., 63 F.3d 166, 180 (3d Cir. 1995)) (choice-of-law clauses are subject to waiver); Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980) (by "proceed[ing] at trial and the appellate level as if Pennsylvania law applied to the interpretation of this contract," the parties "waived any objection to the application of Pennsylvania law").

## A.     Criminal Acts Exclusion

At the outset, we conclude First American's claim against Mountain Lakes clearly falls within the criminal acts exclusion.[2]  First American's lawsuit centers on the allegation Mountain Lakes passed a fraudulent check for $11,316 to the recorder of deeds for Monroe County.  (See Doc. 1-5 ¶¶ 58-63; see also Doc. 1 ¶¶ 18-23).  Mountain Lakes' closing agent, Marinelli, pled guilty on June 12, 2019, to knowingly passing the fraudulent check in question while acting as "principal or agent" of Mountain Lakes.  (See Docs. 10-4, 10-5).  Marinelli's guilty plea and sentence are final adjudications establishing Mountain Lakes engaged in intentional wrongdoing as contemplated by the criminal acts exclusion.

Mountain Lakes does not contest the applicability of the criminal acts exclusion to First American's claim.  (See generally Doc. 24).  *Per contra*, it merely argues Underwriters failed to "fairly inform[]" Mountain Lakes of Underwriters' position regarding coverage and, therefore, waived the right to deny coverage of

---

[2] Underwriters also move for declaratory relief on counterclaim Counts 2, 3, and 5, which assert that First American's claim falls within three other exclusions. (See Doc. 21 at 1; Doc. 22 at 9-17).  We find Underwriters' arguments compelling but need not reach them because application of the criminal acts exclusion provides Underwriters with the maximum possible relief under the terms of the policy.  We will dismiss counterclaim Counts 2, 3, and 5 as moot.  See Aldens, Inc. v. Packel, 524 F.2d 38, 50-53 (3d Cir. 1975) (citing 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1406 (1971)).  Underwriters do not move on counterclaim Count 4.  As counterclaim Count 4 is redundant in remedy to counterclaim Count 1, we will also dismiss it as moot.  See id.

First American's claim.[3]  (See id. at 9).  Waiver is the intentional abandonment of a

legal right.  See Brown v. City of Pittsburgh, 186 A.2d 399, 401 (Pa. 1962); Prime

Medica Assocs. v. Valley Forge Ins. Co., 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009)

(citation omitted).  For a party to a contract to invoke waiver, "there must be a

clear, unequivocal and decisive act of the party with knowledge of such right and an

evident purpose to surrender it."  Commonwealth *ex rel.* Pa. Att'y Gen. Corbett v.

Griffin, 946 A.2d 668, 679 (Pa. 2008) (quoting Brown, 186 A.2d at 401).  This decisive

act can either take the form of an express (*i.e.*, intentional) or implied waiver.  See

Brown, 186 A.2d at 401; Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 148 (3d

Cir. 1999).  Absent intent to waive, Pennsylvania courts will not imply waiver unless

one party to the contract has engaged in some conduct that misleads the other—to

its prejudice—into believing the right has been intentionally waived.  See Brown,

186 A.2d at 401 (citing Frazee v. Morris, 38 A.2d 526 (Pa. Super. Ct. 1944); Barr v.

Deiter, 154 A.2d 290 (Pa. Super. Ct. 1959)).

According to Mountain Lakes, Underwriters impliedly waived the right to

deny coverage because First American's amended and second amended complaints

constitute separate "claims" and Underwriters never specifically reserved its rights

regarding the "claims" embodied in those subsequent complaints.  (See Doc. 24 at

8-9).  We find Mountain Lakes' argument spurious.  The terms of the policy govern

---

[3] Mountain Lakes also raises an unconscionability argument but directs that argument solely at the provision defining "wrongful acts."  (See Doc. 24 at 11-12). Accordingly, the argument has no bearing on the applicability of the criminal acts exclusion and we need not reach it.

what constitutes one claim or multiple claims.  See Westport Ins. Corp. v. Mylonas, 704 F. App'x 127, 130-132 (3d Cir. 2017) (nonprecedential).  The policy states as one of its general conditions that "[a]ll Claims arising out of the same Wrongful Act or *Interrelated Wrongful Acts* shall be deemed one claim."  (See Doc. 1-1 at 19 (emphasis added)).  The policy, in turn, defines "Interrelated Wrongful Acts" as "Wrongful Acts that are temporally, logically or causally connected by any common nexus of any fact, circumstance, situation or event . . . regardless of whether the Claim or Claims alleging such acts involve the same or different . . . legal causes of action."  (See id. at 11).  First American's original, amended, and second amended complaints are plainly interrelated.  They all arise out of the same nexus of facts and circumstances—Mountain Lakes misappropriating funds in a way that caused harm to First American.  (See generally Docs. 1-2, 1-4, 1-5).  Adding new causes of action in the amended and second amended complaint did not create a new claim per the express terms of the policy.  Hence, First American's lawsuit constitutes a single "claim" against Mountain Lakes.

Nor did the reservation-of-rights letter somehow mislead Mountain Lakes as to Underwriters' position on coverage.  See Brown, 186 A.2d at 401.  The letter fully informed Mountain Lakes of Underwriters' doubts concerning Mountain Lakes' purportedly unlawful conduct and asserted "there are provisions in the Policy that may limit or preclude coverage."  (See Doc. 1-3 at 4).  The reservation-of-rights letter also unambiguously states that First American's claim may fall within the criminal acts exclusion.  (See id. at 6-7).  By way of summation, the letter concludes "[t]o the extent the Complaint and claims against you arise out of the above-stated

Exclusion(s), [Underwriters] reserves the right to refuse to indemnify you and withdraw from your defense." (See id. at 7).  Underwriters clearly and unequivocally reserved the right to invoke the criminal acts exclusion, and we can conceive of no reading of the reservation-of-rights letter that could cause Mountain Lakes to believe Underwriters waived the right.[4]

For the above reasons, we conclude as a matter of law that the criminal acts exclusion applies to First American's claim against Mountain Lakes and that Underwriters did not waive the exclusion.  Accordingly, Underwriters had no duty to indemnify or continue to defend Mountain Lakes with respect to First American's claim, and thus did not breach the terms of the policy when it refused to cover First American's claim and withdrew from Mountain Lakes' defense.

---

[4] In conclusory fashion, Mountain Lakes' complaint suggests the doctrine of estoppel bars Underwriters from denying coverage. (See Doc. 1 ¶ 50).  However, Mountain Lakes does not defend this theory in its opposition brief, (see generally Doc. 24), and we therefore deem it abandoned, see Stauffer v. Navient Sols., LLC, 241 F. Supp. 3d 517, 519 n.3 (M.D. Pa. 2017) (Conner, C.J.) (plaintiff's lack of legal support in response to dispositive motion deemed withdrawal of claim (collecting cases)).  Nonetheless, assuming *arguendo* Mountain Lakes did not abandon its estoppel argument, Underwriters' reservation-of-rights letter dispelled any possibility Mountain Lakes justifiably relied on Underwriters covering First American's claim.  See Selective Way Ins. Co. v. MAK Servs., Inc., 232 A.3d 762, 768 (Pa. Super. Ct. 2020) (citing Brugnoli v. United Nat'l Ins. Co., 426 A.2d 164, 167 (Pa. Super. Ct. 1981)).  Lancer sent the letter at most 85 days after Mountain Lakes brought First American's complaint to Underwriters' attention, and federal courts applying Pennsylvania law routinely hold reservation-of-rights letters sent between 75 and 90 days after the insurer received notice of the claim to be timely.  See, e.g., St. Leger v. Am. Fire & Cas. Ins. Co., 870 F. Supp. 641, 643 (E.D. Pa. 1994), aff'd, 61 F.3d 896 (3d Cir. 1995); Rector, Wardens & Vestryman of St. Peter's Church v. Am. Nat'l Fire Ins. Co., No. 00-CV-2806, 2002 WL 59333, at *8 (E.D. Pa. Jan. 14, 2002), aff'd *sub nom.* Rector, Wardens & Vestrymen of St. Peter's Church v. Am. Nat'l Fire Ins. Co., 97 F. App'x 374 (3d Cir. 2004) (nonprecedential).

Mountain Lakes is obligated to reimburse Underwriters for any claim expenses, as defined by the terms of the policy, expended by Underwriters on behalf of Mountain Lakes.  (See Doc. 1-1 at 14).

### B.      Insurance Bad Faith

Pennsylvania allows the insured to recover against an insurer when the insurer has acted in bad faith.  See 42 PA. CONS. STAT. § 8371.  To prevail on a claim for bad faith against an insurer, "'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'"  See Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 522 (3d Cir. 2012) (quoting Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).  Even when an insurer engages in "questionable conduct giving the appearance of bad faith," a claim does not lie so long as the insurer ultimately possessed "a reasonable basis to deny coverage."  See id. at 523 (citing J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 368 (3d Cir. 2004)).

Liability for bad faith can arise from an insurer's conduct in investigating or handling a claim, but the conduct must "import a dishonest purpose."  See id. at 524 (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).  Nonetheless, liability is rare when, as here, there is no duty on behalf of the insurer to provide coverage.  See id. (citations omitted).  Neither "mere negligence nor bad judgment" is sufficient to constitute bad faith; the insured "must show that the insurer breached its duty of good faith through some motive of self-interest or ill-will."  See id. (quoting Brown, 860 A.2d at 501).

Mountain Lakes asserts Underwriters acted in bad faith by (1) reducing the coverage limit and ceasing their defense of Mountain Lakes without conducting an adequate investigation and (2) failing to communicate with Mountain Lakes regarding First American's amended and second amended complaints. (<u>See</u> Doc. 1 ¶¶ 62-64; Doc. 24 at 10-11). Given the nature of the insurance at issue, Underwriters had no reason to investigate beyond the four corners of First American's claim because the four corners of the claim govern the duty to defend and indemnify under Pennsylvania law. <u>See</u> <u>Lupu v. Loan City, LLC</u>, 903 F.3d 382, 389-90 (3d Cir. 2018). Mountain Lakes advances no policy provision, statute, or case law requiring Underwriters to correspond with Mountain Lakes regarding each iteration of First American's complaint. Even if such a duty did exist, the failure to fulfill that duty is mere negligence at most. Mere negligence is not bad faith. <u>See</u> <u>Condio</u>, 899 A.2d at 1143. Similarly, Mountain Lakes pleads no facts suggesting Underwriters' purported failure to investigate or communicate somehow benefited Underwriters. <u>See</u> <u>id.</u> First American's claim against Mountain Lakes was outside the scope of coverage from the first instance; Underwriters stood to gain nothing by delay or silence.

Mountain Lakes has failed to plead that Underwriters engaged in any bad faith conduct. Accordingly, Underwriters are entitled to judgment as a matter of law on Mountain Lakes bad-faith claim. <u>See</u> <u>Sikirica</u>, 416 F.3d at 220.

## IV.     Conclusion

We will grant Underwriters' motion for judgment on the pleadings.  An

appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     June 1, 2022


14